**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2719
_____

DONALD D. PARKELL,
Appellant

v.

PHILLIP MORGAN, Warden, in his individual and official capacities;
MENTAL HEALTH MANAGEMENT; CORRECT CARE SOLUTIONS;
COMMISSIONER CARL DANBERG; LT. PEDRICK
_____

On Appeal from the United States District Court
for the District of Delaware
(D. Del. 1-12-cv-01304)
District Court Judge:  Honorable Sue L. Robinson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 9, 2017
Before:  SHWARTZ, COWEN and FUENTES, Circuit Judges

(Opinion filed:  March 10, 2017)
_____

OPINION[*]
_____

PER CURIAM

Donald D. Parkell appeals the District Court's judgment.  We will affirm in part,

vacate in part, and remand for further proceedings.[1]

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

At all times relevant, Parkell was a pretrial detainee at the Howard R. Young Correctional Institution (HRYCI) in Wilmington, Delaware. Parkell filed suit in the District Court, claiming that he was housed on the critically overcrowded West Side of HRYCI and that the conditions of his confinement amounted to punishment in violation of his due process rights under the Fourteenth Amendment. In addition, Parkell claimed that he was denied due process when Defendant Pedrick sentenced him to "the hole" for twenty days for possessing a staple and a piece of a paperclip, and when he was twice, without justification, confined to his cell and denied his right to all privileges for twenty-four hours. Parkell's complaint also alleged that he was denied equal protection and his right to access the courts. Parkell further claimed that Defendants Morgan, the Warden at HRYCI, Mental Health Management ("MHM"), and Correct Care Solutions ("CCS") were deliberately indifferent to his serious medical needs.

Pursuant to the District Court's screening obligations under 28 U.S.C. §§ 1915A, 1915(e)(2), the court dismissed as frivolous Parkell's equal protection, conditions of confinement, and access-to-courts claims. However, the District Court allowed Parkell to proceed with his deliberate indifference claims against the remaining Defendants. Defendants Morgan, MHM, and CCS later moved for summary judgment, which the District Court granted. Parkell now appeals the District Court's judgment.

---

[1] We also grant Appellee Mental Health Management's motion to file Volume III of its appendix under seal.

We have jurisdiction under 28 U.S.C. § 1291.[2] We exercise plenary review over both the District Court's dismissal and summary judgment orders. See Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000); Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). We will examine the District Court's orders in turn, beginning with its screening order.

In his complaint, Parkell alleged that he had been punished in a variety of ways. Pretrial detainees, who are not sentenced inmates, are protected from "punishment" by the Due Process Clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 (1979). To determine whether Parkell's complaint stated a claim, we must decide whether the Defendants acted "for the purpose of punishment" or for "some other legitimate governmental purpose." Id. at 538; see also Stevenson v. Carroll, 495 F.3d 62, 67 (3d Cir. 2007). "Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" Bell, 441 U.S. at 538 (alteration in original) (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963)).

On appeal, Parkell argues at some length that the conditions at HRYCI were worse for pretrial detainees than they were for convicted prisoners, and that the conditions he experienced thus constituted "punishment." However, "conditions that are

---

[2] There is no merit to Appellees' contention that Parkell was required to file a separate notice of appeal from each of the orders he challenges here. See Shea v. Smith, 966 F.2d 127, 129 (3d Cir. 1992).

'comparatively worse' or 'less comfortable' for pretrial detainees than for convicted inmates are not by themselves tantamount to punishment." Hubbard v. Taylor, 538 F.3d 229, 236 (3d Cir. 2008). Parkell has no provided no basis for challenging the District Court's conclusion that the prison's use of triple-celling and the related conditions violated his process rights, cf. id. at 235 (concluding that triple-celled detainees "were not subjected to genuine privations and hardship over an extended period of time for purposes of their due process claim"), and we therefore will not discuss this claim further.

The District Court also dismissed as frivolous Parkell's claim that Defendant Pedrick unconstitutionally punished him after he was charged with having "dangerous contraband." At his disciplinary hearing on the matter, Defendant Pedrick told Parkell that the dangerous items were a "staple and a small piece of [a] paperclip." Parkell disputed that he was misusing the items in his cell, or that they were dangerous, explaining that they are common items that any inmate might have; nevertheless, Defendant Pedrick told him that he would suffer consequences if he did not comply and sentenced him to twenty days in "the hole." Treating Parkell's allegations as fact, it is reasonable to infer that confining Parkell in a restrictive unit for twenty days was an arbitrary, or excessive, response to his having commonplace items, see Stevenson, 495 F.3d at 68, and that Defendant Pedrick was acting to punish Parkell. See Bistrian v. Levi, 696 F.3d 352, 374-75 (3d Cir. 2012). Although Parkell's complaint also supports the reasonable inference—the same one drawn by the District Court—that Defendant Pedrick was instead acting to maintain security and discipline at the prison, not to punish Parkell, "the fact that [both] inferences may be drawn is proof that dismissal was premature."

4

Stevenson, 495 F.3d at 66. Therefore, we will vacate the District Court's dismissal of Parkell's claims against Defendant Pedrick.

For the same reasons, Parkell's complaint sufficiently alleges that a Due Process violation occurred when he was twice confined to his cell and denied all privileges for twenty-four hours without explanation. Taken as true, Parkell's complaint gives rise to the inference that he was confined to his cell and stripped of his privileges as either retaliation or punishment. See id. at 68. In dismissing portions of Parkell's complaint, the District Court appears to have inadvertently overlooked this claim. Accordingly, on remand, the District Court should assess this claim in the first instance.[3]

We will also vacate the dismissal of Parkell's equal protection claim. Parkell alleged that he was denied equal protection because the conditions of confinement for pretrial detainees, like him, were much worse than the conditions faced by sentenced inmates. The District Court dismissed that claim as frivolous, ruling that Parkell alleged only that he was treated differently than sentenced inmates, but not different from any similarly situated detainees, see Phillips v. Cty. of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008) ("a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant"). However, equal protection requires that "pretrial detainees not be treated less favorably than convicted persons, unless the

---

[3] We note that, unlike his claim against Defendant Pedrick, Parkell did not identify, or name in this lawsuit, the prison guard (or guards) who stripped him of his privileges. Parkell instead sued Defendant Morgan for his role in shaping a policy that allowed prison officials to strip detainees of their privileges without explanation. We will leave it to the District Court, in the first instance, to decide whether Parkell has properly stated a claim against Defendant Morgan.

5

difference in treatment is justified by a legitimate government interest." Lock v. Jenkins, 641 F.2d 488, 497 (7th Cir. 1981); see also Rhem v. Malcolm, 507 F.2d 333, 336 (2d Cir. 1974) ("The demands of equal protection of the laws and of due process prohibit . . . unjustifiable confinement of detainees under worse conditions than convicted prisoners."). Because the District Court applied the wrong standard to Parkell's equal protection claim, we will vacate the summary dismissal of that claim.[4]

Parkell also argues that he was provided inadequate access to the law library, but in his complaints he admitted that he could still perform legal research, order cases and statutes, and prepare legal filings. Moreover, Parkell did not allege any specific injury stemming from the claimed restriction, see Lewis v. Casey, 518 U.S. 343, 351 (1996), and the District Court thus properly dismissed that claim.

We turn now to the District Court's grant of summary judgment in favor of MHM. In his second amended complaint, Parkell alleged that MHM failed to employ a sufficient amount of mental-health providers, and that staff-shortages resulted in an

---

[4] We will otherwise affirm the District Court's dismissal order. Parkell's complaint raised dozens of challenges to his conditions of confinement, but we will not address the challenges he has not raised on appeal. In addition to the claims discussed above, the District Court's screening order also dismissed Parkell's claims against Defendant Danberg as impermissibly premised on a theory of respondeat superior and his access-to-courts claim because he did not allege an actual injury. Parkell does not challenge those rulings on appeal, and thus we will not address them here. See Emerson v. Thiel Coll., 296 F.3d 184, 190 n.5 (3d Cir. 2002). Similarly, Parkell does not challenge on appeal the District Court's grant of summary judgment in favor of Defendant Morgan on his First Amendment free exercise claim based on his Wiccan faith. Nor does he argue that the District Court erred in granting summary judgment in favor of Morgan on the claims about the delay in treatment for his dental or mental health care. Parkell also waived any claim that District Court erred granting summary judgment to CCS on his claim that he was unconstitutionally charged for medication. Accordingly, we will not address those rulings here. See id.

unconstitutional delay in his mental health treatment. To prevail on such a claim, Parkell was required to show a serious medical need, and that MHM's acts or omissions amounted to deliberate indifference to that need. See Parkell v. Danberg, 833 F.3d 313, 337 (3d Cir. 2016); see also Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 581-82 (3d Cir. 2002) (explaining that pretrial detainees' claims of deliberate indifference to serious medical needs under the Due Process clause of the Fourteenth Amendment are analyzed under the standard for similar claims under the Eighth Amendment).

Parkell argues on appeal that MHM's refusal to let him see a psychiatrist from early April 2012 until the middle of May left him "to languish in a mental health crisis," and he points to a prison official's note, in response to Parkell's prison grievance, that he should have been seen by a psychiatrist sooner. MHM argues that no reasonable juror could conclude from the record evidence that it was deliberately indifferent to a serious medical need from the time between Parkell's request for mental health care on April 5, 2012, and his first appointment on May 17, 2012. We agree with MHM.

The undisputed record evidence shows that Parkell received a comprehensive mental health evaluation upon entering HYRCI in late March 2012. His condition was assessed as stable, and he informed the staff that he was not interested in seeing a psychiatrist. Parkell did submit a mental health request form on April 5, 2012, claiming that his "anxiety levels [were] peaking" and seeking his psychiatric records from S.C.I. Rockford, where he transferred from. Parkell was seen by a nurse the next day, April 6, who noted that Parkell had not identified any urgent need. After Parkell filed a second mental-health care request on April 10, he was again seen by a nurse. The records from

7

those visits note that Parkell's care was routine (as opposed to urgent), and, though he claimed to be experiencing anxiety, that he was stable. Parkell was also treated by other medical professionals during the relevant time period, all of whom noted that he was stable. Moreover, notes from a Doctor's visit on May 16, 2012—which addressed Parkell's complaints about a sore throat, a headache, and neck pain—reveal that Parkell was experiencing "no distress." Parkell was seen by a psychiatrist the next day, May 17, 2012, who found Parkell to be calm, cooperative, euthymic, and not anxious or agitated.[5] Put simply, the record evidence contradicts Parkell's claims that he was "languishing in a mental health crisis" to which MHM was deliberately indifferent. During the weeks he claimed that he was suffering in crisis, he was seen by a nurse multiple times and once by a doctor—at no point did he appear in mental distress or alert healthcare workers that he was languishing in a mental health crisis. Accordingly, the District Court properly granted summary judgment in favor of Defendant MHM.

Nor was Parkell entitled to relief on his claim that CCS maintained a custom or a policy that resulted in an unconstitutional delay in his dental treatment. To prove such a claim, Parkell was required to provide evidence of a relevant CCS policy, practice, or custom that caused the violation of his constitutional rights. See Natale, 318 F.3d at 583-84. As the District Court recognized, Parkell provided no such evidence. Parkell relies on the fact that a CCS dentist once errantly (and temporarily) refused to fill Parkell's cavities because the dentist misunderstood Delaware's Bureau of Correctional Healthcare

---

[5] There is no dispute that he received constant and consistent mental health care from that day forward.

8

Services Policy E-06, which sets forth when a detainee was eligible for dental care. However, even if the Dentist's behavior somehow amounted to deliberate indifference, CCS cannot be held responsible under a theory of vicarious liability. See Danberg, 833 F.3d at 338. Accordingly, we will affirm the dismissal of Parkell's claim that CCS violated his constitutional rights.

For these reasons, we will affirm the District Court's judgment in all respects except that we will vacate its summary dismissal of his Fourteenth Amendment claim against Defendant Pedrick, his loss-of-privileges claim, and his equal protection claim.